AO 91
Rev. 11/82

**CRIMINAL COMPLAINT**

ORIGINAL

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

UNITED STATES OF AMERICA
               v.

SIJIAN CHEN,

2007 SEP 25 PM 2:08

CLERK. U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

Docket No.

**ED 07 - 0303M**

MAGISTRATE'S CASE NO _____

Complaint for violation of Title 21, United States Code, Section 841(a).

| NAME OF MAGISTRATE JUDGE OSWALD PARADA | UNITED STATES MAGISTRATE JUDGE | LOCATION Riverside, CA |
|---|---|---|

| DATE OF OFFENSE On or about September 12, 2007 | PLACE OF OFFENSE Riverside County | Address of ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

**Count One**:  **(21 U.S.C.§ 841(a)(1))**

    On or about September 12, 2007, in Riverside County, within the Central District of California defendant SIJIAN CHEN knowing and intentionally manufactured marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1).

FILED
CLERK, U.S. DISTRICT COURT
SEP 25 2007
CENTRAL DISTRICT OF CALIFORNIA

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
   (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE :

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT JASON T. STAAB-PETERS |
|---|---|
| | OFFICIAL TITLE Special Agent - Drug Enforcement Administration |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) | DATE September 25, 2007 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

KSR

**REC: Arrest Warrant and Detention**

A F F I D A V I T

I, JASON T. STAAB-PETERS, being duly sworn, declare and state:

1.      I have been a Special Agent ("SA") with the Drug Enforcement
Administration ("DEA") since January of 2006 and I am currently assigned to the DEA
Riverside District Office, Los Angeles Field Division.  As a Special Agent with the DEA,
my duties have included the investigation of violations of federal laws concerning the
importation, manufacture, possession and distribution of controlled substances as defined
by Title 21, United States Code, including MDMA, cocaine, methamphetamine,
marijuana, and other dangerous drugs.  Prior to my employment with the DEA, I was
employed as a Vice/Narcotics Detective by the Virginia Beach Police Department in
Virginia Beach, Virginia.  As a Virginia Beach Police Detective,  your affiant
investigated over 300 narcotics violations, which resulted in arrests, and/or the seizure of
U.S. Currency, firearms, and the seizure of powdered cocaine, cocaine base, marijuana,
hashish, psilocybin, Oxycontin, methamphetamine, methylenedioxymethamphetamine
(MDMA), d-lysergic acid diethylamide (LSD), and has authored and executed over 40
search warrants resulting in arrests, and/or narcotics and firearms seizures, and the seizure
of currency.  Your affiant has also received training from numerous experts in the field of
indoor marijuana grow operations, as well as from suspects of marijuana indoor grows.
Your affiant also completed a Cannabis Indoor Grows Class at the Northeast Counterdrug
Training Center, in Fort Indiantown Gap, PA.  The training covered cannabis horticulture,
grow-room setup and stages, financial aspects and profit potential of growing marijuana,
and several other aspects of an illegal grow investigation.  Your affiant has been involved
in the investigation, seizure, and dismantling of over 20 indoor marijuana grow

1

operations, and have seized several marijuana plants that have led to convictions for Manufacturing Marijuana. Your affiant has also acted in an undercover capacity as an indoor marijuana grower, discussing equipment and growing techniques at a hydroponics supply store.

2.      Your affiant has received specialized narcotics law enforcement training at the Drug Enforcement Administration Training Academy, Quantico, Virginia. During your affiant's employment with DEA, your affiant has participated in the surveillance and investigation of numerous drug traffickers. Your affiant has debriefed numerous persons arrested for controlled substance trafficking and has debriefed and directed confidential informants in gathering controlled substance intelligence. Also, your affiant has spoken with experienced narcotics investigators concerning the methods and practices of narcotics traffickers. Your affiant has also acted in an undercover capacity as an indoor marijuana grower, discussing equipment and growing techniques at a hydroponics supply store.

3.      Through your affiant's experience and training and your affiant's conversations with other investigators, your affiant has also become familiar with the manner in which controlled substances are imported, manufactured, distributed and sold. Your affiant has become familiar with the efforts of persons engaged in the importation, smuggling, manufacturing, distribution and sales of controlled substances to avoid detection and apprehension by law enforcement officers.

4.      The information contained in this affidavit is based on my personal knowledge of this investigation and information provided to me by DEA agents, other law enforcement officers, and DEA and local intelligence analysts.

2

5.      This affidavit is made in support of a complaint and arrest warrant against

SIJIAN CHEN (CHEN) for violation of Title 21, United States Code, Section 841(a)(1)

(Manufacture of Marijuana).  This affidavit is intended only to set forth probable cause

for the requested complaint and arrest warrant and does not purport to set forth all of my

knowledge of or investigation into this matter.

## **PROBABLE CAUSE**

6.      On September 12, 2007, the Jurupa Valley Sheriff's Station dispatch

received a 911 call from a Chinese male stating he was offered a job to harvest and

transport marijuana from 6562 Hollis Street, Eastvale, California.  The caller stated a

large amount of marijuana was growing on both floors of the residence.  Detective Rico

Garcia, West County Narcotics Task Force (WCNTF) conducted surveillance on the

residence and observed that all of the downstairs windows were covered up.  Detective

Garcia could also hear the sound of running fans through the closed downstairs windows.

Detective Garcia then contacted Southern California Edison Revenue Protection

Investigator David Rivera, who stated the power consumption at the residence was

extremely low for a house of its size, indicating a power meter bypass.  Based on these

circumstances, Detective Garcia prepared a California state search warrant for 6562

Hollis Street, Eastvale, California.

7.      On September 12, 2007, members of WCNTF and members of the Jurupa

Valley Gang Task Force, as well as your affiant, executed the California state search

warrant at a residence located at 6562 Hollis Street, Eastvale, California.  Upon searching

the residence, officers discovered the entire residence had been converted into a large-

scale, industrial size indoor marijuana grow house.  The residence had growing marijuana

3

plants under high intensity lights in almost every room of the two-story house. Approximately 732 marijuana plants and approximately 20 pounds of harvested marijuana were seized by the WCNTF. Three Chinese males, including Sijian CHEN, were found inside the residence and were arrested on state charges for violating California Health and Safety Code 11359, Cultivation of marijuana. The subjects appeared to be actively harvesting the marijuana plants into smokable marijuana bud. CHEN did not appear to speak English and several unsuccessful attempts were made to get a Chinese interpreter to the scene. The other two suspects at the house, Ming Jie ZHAO and Ying Yi CHIU were also arrested.

8.     CHEN was transported to the Jurupa Valley Station of the Riverside County Sheriff's Department. Again, no Mandarin Chinese interpreter was available to translate. Los Angeles Field Division wire room monitor Sinclair Liu (Mandarin translator) was called and spoke to CHEN over speakerphone to answer routine booking questions. When asked about his employment, CHEN stated that he was unemployed. During a search incident to arrest, $2030.00 in U.S. Currency was found in CHEN's Louis Vuitton wallet and back pocket of his jeans.

9.     On September 14, 2007, Andrew Liu, Riverside Sheriff's Department and your affiant interviewed CHEN at the Robert Presley Detention Center. CHEN was advised of his Miranda rights in Mandarin Chinese, which he waived. Andrew Liu translated the interview. CHEN stated the house where he was arrested belonged to a friend of his and this friend was paying him to take care of the plants. CHEN stated he had been in the residence three times. CHEN also stated his friend had taught him (CHEN) how to cultivate marijuana in the manner found in the house. CHEN stated his

4

instructions were to harvest the marijuana in the house that night, and then leave it there. CHEN stated he did not know where the marijuana would go, but that he believed it was sold in California. In reference to the currency found on his person, CHEN stated the money was borrowed from a friend.

10.     CHEN also stated he knew where another house was located that was being used to cultivate marijuana. CHEN stated that he had driven by the house but had never been inside, rather had been told it was an entire house being used to grow marijuana. CHEN stated the house was located off of Highway 14 and could point it out to your affiant on a map if it was detailed enough. CHEN looked at a map and pointed to the intersection of Regent Hill Terrace and Whitecliff Street, in Palmdale, California. CHEN stated the address numerals were "5601," but he was not sure of the street name. CHEN stated the location was a one story house with one-two car garage and a single car garage, both facing the street. Your affiant could not locate an address of 5601 Regent Hill Terrace, but a search of public real estate maps showed a property on a new street (5601 Crane Court, Palmdale, California) not shown on the map given to CHEN. 5601 Crane Court is located one street south of Regent Hill Terrace in the same area where CHEN stated the grow house was located. A search of public real estate records show that 5601 Crane Court was purchased by Jessica Chen on June 7, 2007 for $503,000.

11.     On September 15, 2007, your affiant went to the residence located at 5601 Crane Court, Palmdale, California. It is a one-story house with one-two car garage and a single car garage, both facing the street. Your affiant observed similar characteristics as the other houses in this investigation which contained active indoor marijuana grows. For instance, from the front porch of the residence, your affiant observed all of the blinds to

5

all of the windows to the residence were closed, and behind the blinds a pink curtain was

hanging which prevented light from coming in or out of the residence. While standing on

the front porch of the residence, your affiant could also hear the sound of fans operating

from inside the residence. Based on your affiant's training and experience, I know that

people who operate indoor marijuana grows will cover windows, and any other area in

which someone could see inside the residence, to conceal their illegal activity. Marijuana

cultivators will also cover the windows for the purpose of keeping light out of the

residence. They will do this because marijuana plants need a specific amount of light and

darkness to grow marijuana successfully indoors. Marijuana growers prefer to grow

indoors due to the number of crops a year possible. Marijuana is an annual plant, and

when grown outdoors, flowers during the fall, when there is an equal amount of daylight

and darkness. Indoor growers will accelerate this natural light cycle, creating the same

flowering conditions by controlling the amount of light the plants receive. Any light

leaking into an indoor marijuana grow during a darkness cycle could damage the crop,

resulting in profit loss. Therefore, to maintain a strict light cycle, an indoor marijuana

grow operation will be sealed off from any light other than the grow lights set up

specifically for the plants. You affiant also knows that these indoor grow lights produce

an excessive amount of heat, which needs to be ventilated out of the grow to maintain an

optimum growing temperature for marijuana. Additional fans have been observed by

your affiant at other marijuana grow houses in this investigation, attached to large

"Canfilters." These filters use activated charcoal to filter out the strong odor of growing

marijuana from the house and ventilate it outside so that the odor will not be detected by

neighbors or law enforcement. Large fans attached to the filters draw the air from the

6

grow rooms through lengths of ventilation duct, eventually leading outside.

     12.    On September 17, 2007, Glen De Korne, a Revenue Protection Investigator with Southern California Edison examined the electricity account for 5601 Crane Court, Palmdale, CA. Based on my training and experience, I know that to conduct a large-scale indoor marijuana grow, an extremely large amount of electricity is needed. I also know marijuana cultivators will frequently by-pass the electricity meter to the residence to avoid detection by law enforcement. If the marijuana cultivators do not by-pass the electricity, the kilowatt usage will be extremely high, and is easily detected by law enforcement. In addition to this, without a by-pass of the electricity meter, the marijuana cultivators will have to pay an excessive amount of money for the electricity bill. This will decrease the profit they will make for selling the marijuana. Mr. De Korne stated to your affiant the power usage at 5601 Crane Court was extremely low, indicating a power meter bypass, similar to the residence on Hollis St. where CHEN was arrested.

     13.    Based on your affiant's independent investigation, the information provided by CHEN was been found to be reliable and a state search warrant for 5601 Crane Court was prepared by SA Brian Sale, Riverside District Office, DEA. On September 18, 2007, the search warrant was executed by SA Sale, your affiant, and members of the WCNTF at 5601 Crane Court, Palmdale, CA. Your affiant discovered the entire house had been renovated to house a large, indoor marijuana grow operation. The electricity lines into the residence had been bypassed before the power meter, as suspected. Drywall had been used to cover almost all exterior windows, to conceal the illegal activity inside. No persons were present in the house when the search warrant was executed. 277 suspected marijuana plants were in various stages of growth in the house;

however most were smaller in size. It appeared to your affiant the grow operation had not yet been fully established with the amount of plants planned by the marijuana growers. Many of the rooms of the house had empty grow trays set up on wood frames, grow lights hung above them, with plastic tubs full of chemicals connected to the bottom of a grow tray. This is similar to the hydroponic marijuana grow found at the Hollis Street address.

14.     The trays did not appear to your affiant to have been used yet. Based on the number of trays and lights set up in the residence, and the number of Rockwool grow medium grow cubes that fit per tray, your affiant calculated how many marijuana plants the residence would have been capable of growing. Approximately 4608 marijuana plants could have been cultivated in the house per growing cycle if the marijuana grow operation was operating at maximum capacity. Due to the equipment already in place in the entire house, it appeared to your affiant the marijuana growers intended to do just that.

15.     Based on personally observing the marijuana grow operations at the above mentioned houses, your affiant made the following calculations:

a.     These operations can be classified as "Two Stage Cultivations," where the plants are harvested after they are allowed to mature through Propagation, and Flowering stages, which create smaller flowering cannabis plants which produce smokable material including flowering colas, also known as "bud."

b.     The houses combined would produce a **minimum** of 5340 plants. (4608 + 732=5340) (Minimum because many of the plants at the Hollis Street address had already been harvested.) Each of the 5340 plants would produce a **minimum** of one ounce of flowering tops (colas) or "bud." -5340 plants would therefore produce a minimum yield of 5340 ounces of smokable material, not including leaves or stems (5340

8

plants x 1 oz. per plant).  5340 ounces equates to 333.75 pounds of high grade marijuana (5340 oz. – 16 oz. per lb.).  5340 ounces equates to 149,520 grams. (5340 oz. x 28 grams per oz).

        c.      A minimum of six crops per year can be harvested using the methods involved in this cultivation method.  Based on this minimum, all previous figures must be multiplied by six to determine the minimum amount of marijuana cultivated in a 12 month period.  This calculates to a minimum yield of:  2002.5 pounds or 897,120 grams.

        d.      **Profit Potential** (Based on current street values for hydroponic marijuana):

Ounce Level:  5340 x $300 = $1,602,000 per crop

Pound Level:  333.75 x $4000 = $1,335,000 per crop

Per year, the two houses combined, at a minimum, would generate $8,010,000, selling the marijuana at the pound level.

### CONCLUSION

        Based on the foregoing facts, and my training and experience, I believe that there is probable cause to believe that SIJIAN CHEN violated Title 21 United States Code, Section 841(a)(1) (Manufacture of Marijuana).

Jason Staab-Peters
Special Agent

Subscribed and sworn to before me
On this ___ day of September, 2007

UNITED STATES MAGISTRATE JUDGE

9